RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 9/30/11
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TRACY M. RHONE, SR. | CIVIL ACTION NO. 08-1688 |
| -vs- | JUDGE DRELL |
| CITY OF WINNFIELD, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a Motion for Summary Judgment filed by the only remaining defendant, City of Winnfield.[1] (Document No. 46.) Plaintiff has submitted an opposition, and the matter is ripe for determination. For the reasons set forth herein, the Motion for Summary Judgment will be granted.

## BACKGROUND

**Plaintiff's Allegations**

Plaintiff, Tracy M. Rhone, Sr., filed this suit on November 7, 2008 contending he was denied proper medical treatment while incarcerated at the Winnfield City Jail from December 2007 through March 2008.[2] He particularly asserts he complained about headaches and fainting spells, which he related to high blood pressure, but he was denied emergency room care and was not given his medication. He also claims he was

---

[1] Defendants, City of Winnfield Police Department and Police Chief Johnny Ray Carpenter, were voluntarily dismissed by Order dated September 10, 2009. (Document No. 13.)

[2] Mr. Rhone alleges he entered a guilty plea in March 2008 simply to secure his release secondary to "his dangerous medical condition." (Document No. 1.)

not provided medical assistance for a gum infection and was not given proper facilities in which to collect a stool sample for a medical test. As a result of the lack of medical attention, Plaintiff alleges he lost a tooth, was unable to eat, lost weight, suffered from extreme fevers, and developed diabetes. He seeks compensatory and punitive damages as well as attorney's fees and costs.

Rhone's legal theories are set forth as follows:

As a result of their concerted unlawful and malicious detention and confinement of Plaintiff, Defendants deprived Plaintiff of both his right to his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

Acting under color of law and pursuant to official policy or custom, the defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control and discipline on a continuing basis the actions of the officers in their duties to refrain from conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Louisiana.

Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed and that defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

(Document No. 1, ¶¶ 20 - 22.)

LAW AND ANALYSIS

**Summary Judgment Standard**

As the Fifth Circuit Court of Appeals explained in Seacor Holdings, Inc. v. Commonwealth Ins. Co., 2011 WL 983117 at *3 (5th Cir. 2011) (quotations and internal footnote references omitted):

> A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp v. Catrett, 477 U.S. 317 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). . . . [W]e consider all evidence in the light most favorable to the party resisting the motion. Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983).

Once the movant has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists. United States v. $ 92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008). "However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

**Fourth Amendment and Equal Protection Claims**

While the Complaint generally asserts violations of the Fourth Amendment and the Equal Protection Clause of the U.S. Constitution, none of the information provided by Plaintiff even begins to supply the bases for such claims. In his Complaint, Rhone admits

3

he was arrested for possession of cocaine pursuant to a warrant, and he does not contend the warrant or arrest were improper in any way.[3] He also concedes he entered a guilty plea to a reduced charge of marijuana possession. (Document No. 1.) These facts are supported by the Minutes of the 8th Judicial District Court for March 19, 2008, which reflect Rhone entered the plea in the presence of, and with the assistance of, counsel. The plea was accepted by the court following the presentation of a factual basis for the plea and an appropriate colloquy with Rhone and his attorney. (Document No. 46-4.)

In his opposition to the instant motion for summary judgment, Plaintiff does not elaborate upon, or present evidence regarding, the conditions surrounding Plaintiff's arrest, conviction, or the procedures involved with those incidents. Likewise, although Plaintiff states he is an African-American, there are no allegations he was deprived of any rights as a result of his status as a member of a protected class. Similarly, Plaintiff does not assert that, as a pretrial detainee, he was treated differently from convicted prisoners at the same facility. Therefore, Defendant is entitled to summary judgment on any Fourth Amendment and Equal Protection claims that may be gleaned from the Complaint, and such claims will be dismissed.

---

[3] Plaintiff further alleges he was held in the Winnfield City Jail "[f]or his willful disobedience in pleading guilty." (Document No. 1, ¶ 8.) If this is Plaintiff's attempt to allege some type of unlawful confinement secondary to his guilty plea, it would be ameliorated by the Minutes of Court, which show that on the same date Rhone entered his guilty plea, his sentence was suspended, and he was given credit for time served. (Document No. 46-4.)

**Municipal Liability for Medical Treatment of Pretrial Detainees**

In order to prevail on a municipal liability claim under § 1983, a claimant must establish the following: (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.2001).

To determine the applicable standard for analyzing constitutional challenges by pretrial detainees, the matter must first be classified as an attack on a "condition of confinement" or as an "episodic act or omission." Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir.1996). A "condition of confinement" case is a constitutional assault on "general conditions, practices, rules, or restrictions of pretrial confinement." Id. In such situations, courts may assume, by the municipality's promulgation and maintenance of the condition, that it intended to cause the alleged constitutional deprivation. Id. at 645.

However, if the harm of which the plaintiff complains is a particular act or omission by one or more officials, the action is characterized as an "episodic act or omission." See Hare, 74 F.3d at 645.

> In an episodic act or omission case, an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission. The detainee in such a case must establish that the official(s) acted with subjective deliberate indifference to prove a violation of his constitutional rights. Scott v. Moore, 114 F.3d 51, 54 (5th Cir.1997) (en banc). To succeed in holding a municipality accountable for such a violation, the detainee must show that the municipal employee (1) violated his clearly established constitutional rights with subjective deliberate indifference and (2) the violation resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference. Id., citing Farmer v. Brennan, 511 U.S. 825 (1994).

5

Flores v. County of Hardeman, Tex., 124 F.3d 736, 738 (5th Cir. 1997).

The matter at bar is clearly an episodic act or omission case, since Rhone is complaining individual employees improperly considered his medical complaints. Under these circumstances, we must first apply the subjective standard set forth above. Only if we determine that a violation of Plaintiff's constitutional rights occurred do we move on to consider whether the City of Winnfield is liable for that violation. Id.

"[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir.2001). In order to establish that his right to medical care has been violated, a plaintiff must show that "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference." Hare, 74 F.3d at 650. Negligence, however, is insufficient to meet the standard for deliberate indifference. Id. "To prove deliberate indifference, a pretrial detainee must show that the . . . official knew of and disregarded an excessive risk to the inmate's health or safety. . . ." Gibbs v. Grimmette, 254 F.3d 545, 549 (5th Cir. 2001).

In support of its motion for summary judgment, the City of Winnfield has provided excerpts from Plaintiff's deposition, taken in October 2010. (Document No. 46-3.) In his deposition, Rhone testified that when he was arrested in December 2007, he had been prescribed medication for high blood pressure since some point in the 1980's. However, he did not take the medicine as directed by his physician, because he was scared of the side effects. Therefore, when he felt his blood pressure was "real high," he would take

6

his medication until he felt the condition was "kind of under control." (Document No. 46-3, pp. 4-10.)

Plaintiff further explained that when he arrived at the Winnfield City Jail in December 2007, he informed the Warden, Doris Abrams, that he was taking blood pressure medicine. Ms. Abrams took Rhone to his home to retrieve his medication and a blood pressure cuff. At the jail, Plaintiff monitored his blood pressure twice per day with the cuff, and he believes he was given his medication "on a pretty regular basis." (Document No. 46-3, pp. 10-11 and 40-41.) Plaintiff stated there was one officer who did not distribute pills properly, and that Plaintiff did not receive his blood pressure medicine for approximately three days. Plaintiff complained to Warden Abrams about the situation, she examined the log, and, thereafter, Rhone recalls seeing a sign in the area where the medication was distributed that said, "[D]on't forget to give Tracy Rhone his medicine." (Document No. 46-3, pp. 12-14, and 27.)

Additionally, Plaintiff said that at some point during his incarceration, one of the nurses who treated him at the jail, Mr. Creel, questioned why Plaintiff had not been given medication that had been prescribed for blood in Plaintiff's stool. (Document No. 46-3, pp. 16-17.) Rhone also complained that a jail employee, "Sharon," scheduled an appointment for Plaintiff with a physician for the next day rather than taking him to the emergency room when Plaintiff stated he felt his blood pressure was high. (Document No. 46-3, p. 18.)

On another occasion, Plaintiff asserted he passed out, but Craig Vines, a jail employee, would not let him be examined by paramedics. (Document No. 46-3, p. 21.)

As to Rhone's lost tooth, although he had requested medical assistance, he said the nurse (Mr. Creel) did not treat him or take him to a dentist, so Plaintiff removed the tooth on his own. After Plaintiff pulled the tooth, he "kind of laughed about it" with other inmates, but he did not bring the situation to the attention of any jail employees. (Document No. 46-3, p. 23-25.)

Plaintiff also had a rash he claims went untreated while he was incarcerated, but he does not recall if he told the jail's doctor, Dr. Williams, about the rash when he visited the physician. (Document No. 46-3, p. 26.) Rhone likewise testified he was given the wrong medication on one occasion, and since the jail employees did not follow the proper procedures for him to prepare for a barium enema, the test had to be rescheduled.[4] (Document No. 46-3, pp. 27-30.) Finally, during the week or so before he was released in March 2008, Plaintiff says he became ill, had trouble seeing, was unable to eat anything but cereal, and "lost probably thirty or forty pounds within a week's time." When Rhone requested medical treatment for that condition, he was seen by Mr. Creel, the nurse, and he thinks an appointment was made for him to see a physician. Once Plaintiff was released from jail, he was told by another doctor that he was a borderline diabetic. (Document No. 46-3, pp. 27, 31, and 34-35.)

The medication log from the jail is attached to the Affidavit of Warden Abrams and shows Plaintiff was given Lisinopril or Atenolol/Chlorthal for high blood pressure each day he was incarcerated, except February 1, 5, 6, 19, and March 10, 2008. (Document No. 46-5, Exhibit B.)

---

[4] Rhone admits the delineated procedures were followed for the rescheduled appointment, and the test was eventually performed. (Document No. 46-3, p. 32.)

8

The "Jailer Activity Log" reveals Plaintiff passed out on December 20, 2007 after he was given his medication. Nurse Creel took Plaintiff's blood pressure, which was somewhat elevated, and suggested Plaintiff be monitored. On December 28, 2007, Nurse Creel was called when the jailer stated Plaintiff's blood pressure was high, and Rhone was given his medication. On January 3, 2008, Plaintiff complained that his blood pressure was elevated and said he might need to go to the doctor. That afternoon, Plaintiff checked his blood pressure and was given his medication. (Document No. 46-5, Exhibit C.)

Medical records from the jail show Plaintiff visited Dr. Randolph Williams on four occasions from December 19, 2007 through January 16, 2008 (Document No. 46-5, Exhibit E), and he was taken to Huey P. Long Medical Center four times between January 31 and February 28, 2008 (Document No. 46-5, Exhibit C). Additionally, he was given hemorrhoid cream on January 25, 2008 after complaining about blood in his stool on January 16 and 22, 2008; he had a tooth pulled on February 12, 2008 after he submitted an inmate request form for such treatment; and his blood pressure was taken on February 12, 2008 after he requested same. Further, Rhone was examined on March 11, 2008 by a nurse after he complained of having impaired vision, nausea, frequent urination, and dry mouth for three days. At that time, it was noted that Plaintiff, who did not have any reading glasses, said he probably needed some, and that Rhone stated he was feeling better. (Document No. 46-5, Exhibit D.)

In opposition to the motion for summary judgment, Plaintiff presents no countervailing medical records or evidence. Instead, he simply reiterates the allegations in his Complaint.

Even viewing this evidence in the light most favorable to Plaintiff, there is simply no showing that any officials knew of and disregarded an excessive risk to Rhone's health or safety such that the required "deliberate indifference" threshold could be met. Although there were occasions Plaintiff was not given his medication, these appear to be oversights, which did not continue for extended periods. Again, as noted above, negligence does not constitute deliberate indifference. Hare, 74 F.3d at 650. Likewise, it appears Plaintiff's medical complaints were addressed within reasonable periods of time, and, even though he was only incarcerated for about three months, he received medical care outside of the jail on at least eight different occasions. As to the complaints that arose within the last few days of Plaintiff's incarceration, the information available shows Plaintiff was seen by a nurse, and he claimed he was feeling better.

The jurisprudence is clear that simple disagreement by an incarcerated individual with the diagnosis and treatment he is provided cannot support a claim of deliberate indifference. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Similarly, the fact that a plaintiff does not believe his medical treatment was as good as it should have been does not establish a cognizable complaint under the Civil Rights Act. See Woodall v. Foti, 648 F.2d. 268, 272 (5th Cir. 1981).

For these reasons, the undisputed material facts of record fail to establish a constitutional violation. Therefore, it is not necessary to analyze the issue of whether a policy or custom by the City of Winnfield existed. Defendant's Motion for Summary Judgment (Document No. 46) will be granted, Plaintiff's federal claims will be dismissed with prejudice, and his supplemental claims under Louisiana law will be dismissed without prejudice.

SIGNED on this  30th  day of September, 2011 at Alexandria, Louisiana.

Dee D. Drell
United States District Judge